IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

| | |
|---|---|
| **JAMES MARTIN EVANS, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 2:14-29072** |
| ) | |
| **CAROLYN W. COLVIN ,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Orders entered December 11, 2014, and January 5, 2016 (Document Nos. 4 and 14.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 11 and 12.) and Plaintiff's Reply. (Document No. 13.) .

The Plaintiff, James Martin Evans Jr. (hereinafter referred to as "Claimant"), filed an application for SSI on November 8, 2011 (protective filing date), alleging disability as of January 1, 2005, due to chronic arthritis, social phobia, and depression.[1] (Tr. at 15, 206-12, 309, 313.) The claims were denied initially and upon reconsideration. (Tr. at 127-29, 138-40, 142-44.) On May 3,

---

[1] On his form Disability Report - Appeal, dated April 16, 2012, Claimant asserted that the frequency of his panic attacks had increased and that he experienced increased depression and anxiety. (Tr. at 246.)

2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 145-46.) A hearing was held on March 27, 2013, before the Honorable I. K. Harrington. (Tr. at 37-108.) By decision dated May 22, 2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-29.) The ALJ's decision became the final decision of the Commissioner on September 30, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) Claimant filed the present action seeking judicial review of the administrative decision on November 26, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of

disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic

>  limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>    (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>    (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). [2] Fourth, if the claimant's

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, November 8, 2011. (Tr. at 17, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "lumbar strain, osteoarthritis, bipolar disorder, generalized anxiety, [and] alcohol abuse in remission," which were severe impairments. (Tr. at 17, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17-18 Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light work, as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he could frequently balance. He could occasionally stoop, kneel, crouch, crawl, and climb. He must avoid concentrated exposure to extreme cold, vibration, hazards such as unprotected heights and dangerous moving machinery. He retained the ability to perform simple and routine tasks involving no more than simple short instructions and simple work-related decisions with few work place changes, and occasional interaction with the general public and co-workers.

(Tr. at 20, Finding No. 4.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 28, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an assembler, a stocker, and laundry worker, at the unskilled, light level of exertion, and as a bench worker, hand packer, and an assembler, at the unskilled, sedentary level of exertion. (Tr. at 28-29, Finding No. 9.) On this basis, benefits were denied. (Tr. at 29, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on April 7, 1959, and was 53 years old at the time of the administrative hearing, March 27, 2013. (Tr. at 28.) Claimant had a limited education and was able to communicate in English. (Tr. at 28.) In the past, he worked as a construction laborer and home health caregiver. (Tr. at 28, 95.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence of record, and will discuss it below as it relates to the undersigned's findings and recommendation respecting Claimant's mental impairments.

*Dr. Elma Z. Bernardo, M.D.*:

The record reflects Claimant's with Dr. Bernardo from February 26, 2009, through January 30, 2013. (Tr. at 613-52, 701-07.) On November 2, 2011, Dr. Bernardo completed a form on which she noted Claimant's diagnoses to include Bipolar I Disorder and panic disorder without agoraphobia. (Tr. at 650.) On November 16, 2011, Claimant reported feelings of depression. (Tr. at 630.) He stated that he worried about everything and feels useless after the holidays. (Id.) Dr. Bernardo noted that Claimant's mood was anxious and irritable, his affect was labile, he experienced paranoid delusions and obsessions, and had hyperactive psychomotor behavior. (Tr. at 631.) She opined that Claimant's insight, judgment, and memory were mildly deficient, and that her social functioning, concentration, persistence, and pace were moderately deficient. (Id.) On January 13, 2012, Dr. Bernardo completed a form Routine Abstract Form – Mental, on which she diagnosed bipolar disorder, panic disorder without agoraphobia, and obsessive traits, and assessed

7

a GAF of 60. (Tr. at 632.)

On August 21, 2012, Dr. Bernardo completed a Mental Impairment Questionnaire at the request of the Social Security Administration ("SSA"), where she checked boxes regarding Claimant's alleged mental limitations. (Tr. at 636-41.) Dr. Bernardo opined that Claimant had marked limitations in his ability to set realistic goals or make plans independent of others, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination or proximity to others without being unduly distracted by them, and complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 639-41.) She assessed moderate limitations in his ability to understand, remember, and carry out detailed instructions; maintain attention for extended periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation. (Tr. at 639-41.) Finally, she assessed slight limitations in Claimant's ability to remember work-like procedures, understand and remember very short simple instructions, and make simple work-related decisions. (Id.) Dr. Bernardo completed a further Mental Impairment Questionnaire on September 11, 2012, wherein she assessed similar limitations. (Tr. at 643-49.)

On January 14, 2013, Dr. Bernardo completed a form Physician's Summary, on which she noted that she last examined Claimant on August 15, 2012, and that he was diagnosed with bipolar

disorder and panic disorder without agoraphobia. (Tr. at 679.) She opined that Claimant's impairments were expected to last for his lifetime and that his employment limitations were labile mood changes and panic attacks. (Id.)

On January 30, 2013, Dr. Bernardo noted that Claimant had a normal appearance; was oriented to time, place, and person; exhibited pressured speech; had an anxious mood and labile affect; had intact memory; and presented with fair insight and judgment. (Tr. at 704.) On March 25, 2013, Dr. Bernardo completed another Routine Abstract Form – Mental, on which she noted that Claimant had an anxious and irritable mood, broad affect, paranoid delusions, auditory hallucinations, obsessions, rambling speech, retarded psychomotor behavior, mildly deficient memory and concentration, and moderately deficient insight, judgment, social functioning, task persistence, and pace. (Tr. at 701-03.) Dr. Bernardo diagnosed schizoaffective disorder, bipolar type and panic disorder without agoraphobia, and assessed a GAF of 60. (Tr. at 701.)

*Dr. Holly Cloonan, Ph.D.:*

On January 17, 2012, Dr. Cloonan, a State agency reviewing medical consultant, completed a form Psychiatric Review Technique, on which she opined that Claimant's bipolar disorder, generalized anxiety with obsessive traits, and history of alcohol abuse resulted in mild restrictions of daily activities; moderate difficulties in maintaining social functioning, concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 507-20.) In reaching her decision, Dr. Cloonan reviewed the October 2010, through January 13, 2012, records from Ms. Bernardo and the consultative evaluation report from Lester Sargent. (Tr. at 519.) Dr. Cloonan also completed a form Mental RFC Assessment, on which she opined that Claimant had moderate limitations in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; maintain attention and concentration

9

for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and get along with coworkers and peers without distracting them or exhibiting behavioral extremes. (Tr. at 521-22.) She opined that Claimant was "able to learn and perform routine, repetitive, work-like activities in a setting with limited interactions with the public and with coworkers." (Tr. at 523.) On March 30, 2012, Dr. Bob Marinelli, Ed.D., reviewed the evidence of record and affirmed Dr. Cloonan's assessment, as written. (Tr. at 534.)

*Sheila Emerson Kelly, M.A.*:

On August 17, 2012, Ms. Kelly conducted a consultative psychological examination at the request of Claimant's attorney. (Tr. at 681-93.) Claimant reported having a good relationship with his three children and that he lived in an apartment with his brother. (Tr. at 681.) He stated that he dropped out of school in the eleventh grade because he was caught selling drugs at school. (Tr. at 682.) He had low performance in school and failed the seventh grade in part because he missed too much school. (Id.) Claimant reported daily activities to have included watching television, talking to friends, playing music with his friends, taking out the trash, doing light housework, and occasionally going to the store. (Tr. at 684-85.) Claimant reported auditory hallucinations where God spoke to him. (Tr. at 685, 687.)

On mental status exam, Ms. Kelly noted that Claimant had a slightly flat affect but was very pleasant friendly. (Tr. at 685.) With medication, he described his mood as "fairly good." (Id.) Results of the Wechsler Adult Intelligence Scale-IV ("WAIS-IV"), revealed a full scale IQ of 79, a verbal comprehension index of 93, and a perceptual reading index of 81. (Tr. at 686.) Ms. Kelly opined that Claimant's full scale score fell within the borderline range of intellectual functioning.

(Id.) She noted that his scores were consistent with scores obtained in 2011. (Id.) Results of the Wide Range Achievement Test-4 ("WRAT-4"), revealed word reading and math computation at a fourth grade level, which Ms. Kelly opined was significantly limited and contrary relative to his "very strong verbal abilities." (Id.) Ms. Kelly opined that Claimant did not have any significant social difficulties and that processing speed was a problem for him keeping his concentration. (Tr. at 687-88.) Ms. Kelly diagnosed bipolar disorder type I in partial remission with treatment, history of alcohol and marijuana dependence in partial remission, and reading disorder, and assessed of GAF between 50 and 60. (Tr. at 688-89.)

Ms. Kelly assessed slight and moderate functional mental limitations, with the exception of marked limitations in Claimant's ability to maintain attention and concentration for extended periods. (Tr. at 691-93.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in selectively relying upon and according significant weight to portions of Dr. Bernardo's opinion that did not support a finding of disability and arbitrarily denying and giving partial weight to the portions of her opinion that supported a finding of disability. (Document No. 11 at 12-16.) Claimant notes that no medical source challenged Dr. Bernardo's 2012 and 2013 reports. (Id. at 12.) Claimant also alleges that the ALJ erred in giving substantial weight to Dr. Cloonan's opinion, when she had access to only two of Dr. Bernardo's reports, and lacked access to Dr. Bernardo's more detailed and restrictive opinions. (Id.) Although the ALJ challenged Dr. Bernardo's opinion based on its check-box format, the ALJ apparently overlooked that Dr. Cloonan's opinion also was rendered her opinion with the same check-box format. (Id. at 12-13.) Claimant also asserts that the ALJ improperly discounted Dr. Bernardo's opinion as

11

inconsistent with her treatment notes and failed to state how it was inconsistent. (Id. at 13-14.) He notes instances on which Dr. Bernardo's notes reflected excessive worrying, feelings of distraught, feelings of uselessness, inability to be around others, struggling with the loss of his girlfriend, and audible hallucinations. (Id.) Claimant asserts that Dr. Bernardo's limitations were consistent with those assessed by Ms. Kelly. (Id. at 14.) If the ALJ questioned Dr. Bernardo's opinion, then he should have retained the services of expert testimony. (Id.) Consequently, Claimant contends that the weight the ALJ accorded to Dr. Bernardo's opinions was not supported by the substantial evidence of record.

In response, the Commissioner asserts that in formulating Claimant's RFC, the ALJ properly considered and weighed the opinion evidence of record in accordance with the controlling Regulations. (Document No. 12 at 10-12.) She asserts that the ALJ reasonably gave Dr. Bernardo's opinion some weight and was not required to include every degree of limitation in her RFC assessment. (Id. at 10.) The Commissioner contends that the ALJ appropriately noted that Dr. Bernardo's marked limitations were inconsistent with her other opinions that demonstrated only mild to moderate limitations. (Id. at 11.) Furthermore, Dr. Bernardo's opinions were inconsistent with Claimant's reports that medication helped control his symptoms and with examination notes. (Id.) Consequently, the Commissioner contends that substantial evidence supports the ALJ's evaluation of Dr. Bernardo's opinions. (Id. at 11-12.)

Claimant asserts in reply that treating physician opinions are entitled great weight unless there is persuasive contradictory evidence. (Document No. 13 at 1.) He asserts that neither the Commissioner nor the ALJ "provide any actual explanation, analysis or example of how Dr. Bernardo's marked limitations are somehow inconsistent with the other areas that [Claimant] had moderate/mild impairments." (Id. at 2.) Claimant asserts that Dr. Bernardo's various opinions

12

supplement, rather than contradict each other. (Id. at 2-3.) He contends that the ALJ was unable to explain any inconsistencies between Dr. Bernardo's January 2012, and August 2012, opinions because none exist. (Id. at 3.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to account for Claimant's mental limitations in her RFC, as required by the decision in Mascio v. Colvin, 780 F.3d 362 (4tha Cir. 2015). (Document No. 11 at 16-17.) Claimant states that in Mascio, the Fourth Circuit remanded the matter to require the ALJ to make specific findings regarding the vocational impact of the claimant's deficits in concentration, persistence, or pace. (Id. at 16.) Claimant asserts that pursuant to the holding in Mascio, the ALJ did not account for his limitations in concentration, persistence, and pace by restricting hypothetical questions to the VE to simple, routine tasks or unskilled work. (Id.)

In response, the Commissioner asserts that Claimant overstates the holding in Mascio v. Colvin, to stand for the "bright-line rule" that when an ALJ finds moderate limitations in concentration, persistence, or pace, the ALJ may never assess a claimant's RFC without including that finding in the RFC. (Document No. 12 at 12-14.) The Commissioner asserts that where the medical evidence demonstrates that a claimant can carry out simple tasks, an ALJ's hypothetical to that effect accounts for moderate limitations in maintaining concentration, persistence, or pace. (Id. at 13.) The Commissioner contends that in this case, the ALJ explained why Claimant's moderate limitations at step three did not translate into a limitation in his RFC, beyond restricting him to unskilled work. (Id. at 14.) Consequently, the Commissioner contends that the ALJ's decision is supported by substantial evidence. (Id. at 14-15.)

Analysis.

    1. <u>Treating Source Opinion</u>.

Claimant alleges that the ALJ erred in giving significant weight to portions of Dr. Bernardo's opinions that supported her hypothetical and only partial weight to Dr. Bernardo's contrary findings that did not support her assessed RFC. (Document No. 11 at 12-16.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." <u>Id.</u> §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of

specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2011). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2013). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2013). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2013). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

In the instant matter, the ALJ acknowledged Dr. Bernardo's January 13, 2012, assessment and opinion that Claimant had no limitation in his ability to carry out very short instructions and ask simple questions or request assistance. (Tr. at 27.) She also noted Dr. Bernardo's marked limitations in Claimant's ability to maintain regular attendance, be punctual, sustain ordinary routine without supervision, work in coordination with others, complete a normal workday or workweek, perform at a consistent work pace, and work independently of others. (Id.) The ALJ accorded Dr. Bernardo's opinion only partial weight based on the treating relationship and the extent the opinion was supported by other opinion evidence. (Id.) The ALJ also found that the probative value of the opinion was questionable in view of treatment notes that demonstrated the effectiveness of treatment. (Id.) She further found that Dr. Bernardo's opinion was inconsistent with her other opinion of only mild to moderate deficits in mental functioning. (Id.) Finally, the ALJ noted that Dr. Bernardo failed to support her opinion with clinical findings but rather simply checked off boxes or filled in the blank. (Id.)

Respecting the extent that Dr. Bernardo's opinion was supported by other opinion evidence, the undersigned notes that the ALJ accorded Ms. Kelly's opinion only partial weight to the extent that it was consistent with Dr. Cloonan's opinion. (Tr. at 27.) The ALJ discounted Ms. Kelly's opinion for one of the same reasons she discounted Dr. Bernardo's opinion: she simply checked-off boxes or filled in the blank without any explanation or reference to clinical findings that supported her opinion. (Id.) The ALJ assigned significant weight to Dr. Cloonan's opinion because it was consistent with the medical evidence. (Tr. at 27-28.) Claimant correctly notes that Dr. Cloonan's opinion consisted of check-box and fill in the blank styles, as did Dr. Bernardo's and Ms. Kelly's opinions. The undersigned notes however, that Dr. Cloonan included a page of her notes that identified the evidence upon which she relied, Claimant's reported activities, and a

brief statement that explained her opinion. (Tr. at 519.) Dr. Bernardo provided little or no explanation for her opinions. Although Dr. Cloonan did not consider all the evidence, particular subsequent opinions and notes from Dr. Bernardo, the undersigned finds that the ALJ considered all the evidence and that her reliance upon Dr. Cloonan's opinion was appropriate.

Regarding the inconsistencies between Dr. Bernardo's opinion and treatment notes, the undersigned notes that the ALJ referenced a treatment note from October 11, 2010, which indicated mildly deficient judgment and insight, obsessions, hyperactive psychomotor activity, an irritable and anxious mood, and a labile affect, with normal findings otherwise. (Tr. at 27, 614.) Likewise, the ALJ referenced a March 25, 2013, treatment note that reflected only mild deficiencies in memory and concentration, and only moderate deficiencies in insight, judgment, social functioning, task persistence, and pace. (Tr. at 27, 702.) These moderate deficiencies are somewhat inconsistent with Dr. Bernardo's marked limitations in sustaining a routine and working with others. (Tr. at 639.) The undersigned notes that the majority of Dr. Bernardo's treatment notes, and many of which Claimant addresses in his Brief, concern the period of time prior to the relevant period, from November 8, 2011, the application date, through May 22, 2013, the date of the ALJ's decision. The undersigned further notes that Dr. Bernardo changed some of her assessed limitations from January 2012, to September 2012, to reflect improvements in Claimant's impairments. (Tr. at 639, 646.) Accordingly, in view of the foregoing, the undersigned finds that the ALJ's decision to accord to varying weights to different portions of Dr. Bernardo's opinion is supported by the substantial evidence of record.

2. <u>RFC Finding</u>.

Claimant also alleges that the ALJ failed to account for his mental limitations in her RFC as required in <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015). (Document No. 11 at 16-17.) "RFC

represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2013). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." Id. The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. The Fourth Circuit further noted that a per se rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are

'irrelevant or uncontested." Id. Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (*Citing* Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); see also, Ashby v. Colvin, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

In Mascio, the ALJ found that the claimant had moderate limitations in concentration, persistence, or pace, but the ALJ failed to indicate why these limitations at step three of the sequential analysis, did not translate into a limitation to the claimant's RFC. Id. at 637-38. As the Commissioner notes, the Third Circuit has adopted the approach that where an ALJ poses a hypothetical question to the VE that the claimant is able to carry out simple tasks, then that hypothetical accounts for moderate limitations in maintaining concentration, persistence, or pace. See Holly v. Commissioner, 590 Fed.Appx. 167, 168 (3d Cir. 2014); Hurst v. Commissioner, 522 Fed.Appx. 522, 525 (3d Cir. 2013)("where medical evidence demonstrated that a claimant could engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, a hypothetical including only unskilled work sufficiently accounted for the limitations.").

In the instant matter, the ALJ assessed moderate limitations in Claimant's ability to maintain concentration, persistence, or pace. (Tr. at 19.) She cited specific evidence to support her conclusion. (Id.) Dr. Cloonan's opinion, as well as Dr. Bernardo's notes, supports the ALJ's finding that Claimant was able to perform simple, routine tasks, and therefore, the ALJ's exclusion of moderate limitations in concentration, persistence or pace in her hypothetical questions to the VE does not require remand. The undersigned finds that the medical evidence demonstrated Claimant's ability to perform simple routine, unskilled tasks.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District

Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 12, 2016.

20

Omar J. Aboulhosn
United States Magistrate Judge