UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JAMES MARTIN EVANS, JR.,

Plaintiff,

v.                                    Civil Action No. 14-29072

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

Defendant.

MEMORANDUM OPINION AND ORDER

Pending are the objections filed on February 29, 2016, by plaintiff James Martin Evans, Jr., to the magistrate judge's proposed findings and recommendation ("PF&R").

I.

On November 26, 2014, plaintiff instituted this civil action, pursuant to 42 U.S.C. § 405(g). This action was referred to United States Magistrate Judge Omar J. Aboulhosn. Plaintiff seeks judicial review of the final decision by defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's application for social security benefits.

On February 12, 2016, the magistrate judge filed his PF&R. In that document, the magistrate judge recommends that the Commissioner's final decision be affirmed and this matter

dismissed from the docket.  On February 29, 2016, plaintiff timely filed his objections, and on March 1, 2016, the Commissioner filed her response thereto.

Plaintiff objects to the magistrate judge's determination that the Administrative Law Judge ("ALJ") was supported by substantial evidence in declining to give controlling weight to a report by plaintiff's treating physician, Dr. Elma Z. Bernardo.  The Commissioner, in response, maintains that the ALJ "reasonably gave Dr. Bernardo's opinion some weight and was not obligated to adopt [Dr. Bernardo's] opinion wholesale[.]"

## II.

The sole issue before the court is whether the decision denying plaintiff's claim is supported by substantial evidence.  See 45 U.S.C. § 405(g).  Substantial evidence is evidence "which a reasoning mind would accept as sufficient to support a particular conclusion."  Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1996)).

2

**A.**

Every medical opinion reviewed by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927.  Further, under the treating physician rule, an ALJ must generally give relatively more weight to the medical opinions of a claimant's treating physician when determining whether a claimant is disabled.  <u>See</u> 20 C.F.R. § 416.927(c); <u>Russell v. Comm'r of Soc. Sec.</u>, 440 F. App'x 163, 164 (4th Cir. 2011).  Indeed, a treating physician's opinions concerning the "nature and severity" of a claimant's impairments are to be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]"  20 C.F.R. § 416.927(c)(2).  But even if a treating physician's opinion is ultimately adjudged not to be entitled to controlling weight, our court of appeals has explained that "the value of the opinion must be weighed and the ALJ must consider: (1) the physician's length of treatment of the claimant, (2) the . . . frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the

consistency of the opinion with the record as a whole[,] and (6) the specialization of the treating physician." Burch v. Apfel, 9 F. App'x 255, 259-60 (4th Cir. 2001) (citing 20 C.F.R. § 404.1527). Whatever the ALJ's conclusion, it must be explained in his decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Gordon v. Schweiker, 724 F.2d 231, 233 (4th Cir. 1984).

### B.

Dr. Bernardo began treating plaintiff in February of 2009. Tr. at 632. In August of 2012, Dr. Bernardo filled out a mental impairment questionnaire, in which she checked boxes regarding plaintiff's mental and psychological limitations. Tr. at 636-41.

In that document, Dr. Bernardo stated that plaintiff was "slightly" limited in his ability to remember work-like procedures, understand and remember short and simple instructions, and make simple work related decisions. Tr. at 639. She indicated that plaintiff was "moderately" limited in his ability to understand, remember, and carry out detailed instructions, maintain attention for extended periods of time, interact appropriately with the public, respond appropriately to

4

criticism from workplace supervisors, get along with co-workers without unduly distracting them, respond appropriately to changes at work, and travel in unfamiliar places or use public transportation.  Tr. at 639-41.  Finally, Dr. Bernardo checked boxes indicating that plaintiff had "marked" limitations in his abilities to maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, work alongside others without being unduly distracted by them, complete a normal work day and work week without undue interruptions due to his symptoms, perform at a consistent pace, and make plans independently of others.  Tr. at 639-41.

        As noted above, Dr. Bernardo's opinion did not receive controlling weight in this case.  Rather, the ALJ found that the probative value of Dr. Bernardo's opinion was limited, given the limited nature of the documentation in support of it.  Tr. at 24.  In particular, the ALJ was concerned that the assessment was composed of check-box answers to general questions, offered without any explanation or reference to clinical findings.  Tr. at 24-27.  The ALJ further found that Dr. Bernardo's assessment was inconsistent with Dr. Bernardo's own, earlier opinions about plaintiff's mental health, but that again no explanation was offered for the inconsistency.  Tr. at

5

25.  Finally, the ALJ found that Dr. Bernardo's assessment was not supported by other substantial evidence in the record.  Tr. at 26-27.  Consequently, the ALJ gave Dr. Bernardo's report some weight -- primarily in light of her treating relationship with plaintiff -- but not controlling weight.  Tr. at 27.

Chief among the aforementioned contrary evidence in the record were the opinions offered by Sheila Emerson Kelly, M.A., and Holly Cloonan, Ph.D.  According to the ALJ, Ms. Kelly's opinion was entitled to "partial weight based on the examining relationship" between plaintiff and Ms. Kelly, but diminished in authority "considering [Ms. Kelly's] only obligation [in completing the assessment] was to merely check [] off boxes or fill[] in the blank, without any . . . reference to the clinical findings."  Tr. at 27.

Plaintiff visited Ms. Kelly on August 17, 2012, for a consultative psychological examination at his counsel's request. Tr. at 681-89.  Ms. Kelly diagnosed plaintiff with bipolar disorder.  Tr. at 688.  She also noted a history of alcohol and marijuana dependence, both of which were at that time in partial remission.  Id.  Like Dr. Bernardo, Ms. Kelly filled out a questionnaire in which she checked boxes indicating plaintiff's mental or psychological strengths and weaknesses.  Tr. at 691-

6

93.  Ms. Kelly opined that plaintiff labored under "slight" or "moderate" limitations in every category of review, except that she found a "marked" limitation in plaintiff's ability to maintain attention for extended periods of time.  Id.

In addition, plaintiff's medical records, but not plaintiff himself, were examined by Dr. Cloonan, a state agency psychologist.  Tr. at 507-24.  Like Dr. Bernardo and Ms. Kelly, Dr. Cloonan completed a form report with checkboxes.  See Tr. at 508-18.  However, Dr. Cloonan's report was supplemented by a page of notes summarizing plaintiff's medical history, as it related to treatment of his mental health problems, and drawing conclusions therefrom.  See Tr. at 519.  According to the ALJ, Dr. Cloonan's findings were entitled to "significant weight[,] as they are consistent with the medical record[.]"  Tr. at 28.

In his review, Dr. Cloonan noted that plaintiff had mild difficulties with daily activities, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation.  Tr. at 517.  Nevertheless, in assessing plaintiff's mental RFC, Dr. Cloonan stated that plaintiff could perform routine, repetitive work-like activities in a setting with limited interactions with the public and co-

7

workers.  Tr. at 523.  On March 30, 2012, Bob Marinelli, Ed.D., another state agency psychologist, reviewed plaintiff's medical records and agreed with Dr. Cloonan's assessment.  Tr. at 534.

The ALJ found that plaintiff's diagnosed bipolar disorder, generalized anxiety disorder, and substance abuse were "severe" impairments.  Tr. at 17-20.  Despite the presence of these impairments, the ALJ concluded that plaintiff retained the capacity to perform a reduced range of light work.  Tr. at 20-28.  In so concluding, the ALJ noted Dr. Bernardo's January 13, 2012, assessment and opinion that plaintiff had no limitations in his ability to carry out short instructions or to ask simple questions.  Tr. at 27.  The ALJ also took into account Dr. Bernardo's aforementioned report that plaintiff had marked limitations in his ability to maintain regular attendance at work, be punctual, maintain an ordinary routine without supervision, work together with others without being unduly distracted by them, complete a normal work day and work week, and to perform at a consistent pace.  Id.  After receiving testimony from a vocational expert, the ALJ concluded, as noted above, that plaintiff could perform a range of relatively low skill jobs.  Tr. at 28.  Consequently, plaintiff's application for social security benefits was denied.

Upon independent review of the record, the court concludes that the ALJ was supported by substantial evidence in deciding to give Dr. Bernardo's opinion some weight, but not controlling weight. In making her determination, the ALJ thoroughly explained her rationale for the weight afforded to the medical opinions -- including that of Dr. Bernardo -- and substantial evidence supports her findings. Specifically, the ALJ weighed and explained the evidence submitted by plaintiff in support of his claim, addressing in turn the opinions of Dr. Bernardo, Ms. Kelly, and Dr. Cloonan, along with the testimony provided at trial by plaintiff and his brother. Tr. at 26-28.

As noted, Dr. Bernardo's conclusions failed to discuss any rationale, provide any explanation, or cite to any clinical or diagnostic evidence in support thereof. Cf. 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Rather, Dr. Bernardo's conclusions were presented in form reports, lacking vital explanatory details. See, e.g., McGlothlen v. Astrue, No. 11-148, 2012 WL 3647411, at *6 (E.D.N.C. Aug. 23, 2012) ("[F]orm reports . . . are arguably entitled to little weight due to the lack of explanation[.]");

Bishop v. Astrue, No. 10-2714, 2012 WL 951775, at *3 n.5 (D.S.C. Mar. 20, 2012) ("'[F]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'") (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)).

Moreover, the "marked" limitations noted in Dr. Bernardo's assessment were inconsistent with Dr. Bernardo's earlier examination reports, which showed relatively mild problems. Compare Tr. at 639-41 (showing a large number of "marked" limitations) with Tr. at 631, 702 (each report showing only "moderate" and "mild" problems). Yet, the abrupt change in Dr. Bernardo's assessment, from relatively mild problems to relatively serious ones, is not explained. 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Likewise, the court observes that the ALJ, in considering the inconsistencies between Dr. Bernardo's opinion and other substantial evidence in the record, referenced an October 11, 2010, treatment note indicating some moderate deficiencies while making normal findings otherwise. Tr. at 27 (referring, in turn to Tr. at 614); see also id. (referring to Tr. at 702, containing a treatment note from Dr. Bernardo, dated

10

March 25, 2013, which indicated only mild to moderate
deficiencies).  Further, the record indicates that Dr. Bernardo
changed some of her earlier, more negative findings to reflect
improvements in plaintiff's condition occurring from January of
2012 to September of 2012.  Tr. at 639, 646.  Finally, evidence
from Ms. Kelly and Dr. Cloonan conflicted with Dr. Bernardo's
assessment of fairly severe deficiencies in functioning,
although these opinions were supplemented by written analysis
and clinical findings, whereas Dr. Bernardo's were not.  Compare
Tr. at 631-41 (Dr. Bernardo) with 681-89 (Ms. Kelly) and 523-24
(Dr. Cloonan).

        The relatively un-detailed assessment compiled by Dr.
Bernardo, the contrary evidence from Dr. Bernardo herself, and
other evidence in the record showing fairly mild psychological
deficiencies, provide substantial support for the ALJ's
determination to give Dr. Bernardo's report less than
controlling weight.  The court notes, as well, that the ALJ
refrained from giving Dr. Bernardo's report no weight, instead
giving it some weight in light of Dr. Bernardo's status as
plaintiff's treating physician.  Given the aforementioned
inconsistences, coupled with the less-than-comprehensive nature
of Dr. Bernardo's reports, the court concludes that the ALJ's

11

decision to accord less than controlling weight to Dr.
Bernardo's opinion was supported by substantial evidence.

III.

The court pauses to consider the arguments presented
by the parties in their briefing before the magistrate judge
respecting the effect of Mascio v. Colvin, 780 F.3d 632 (4th
Cir. 2015), on this case, although it appears that plaintiff
objects only to the magistrate judge's treatment of Dr.
Bernardo's opinion, as discussed in full above.

To begin, the court notes that, whereas the Fourth
Circuit decided Mascio in 2015, the ALJ in this case published
his decision on May 22, 2013.  Nevertheless, as stated above,
the parties address Mascio in some detail in their briefing
before the magistrate judge.  Specifically, plaintiff asserted
that the ALJ failed to account for plaintiff's mental
limitations when making her RFC determination.

RFC -- residual functional capacity -- "represents the
most that an individual can do despite his or her limitations or
restrictions."  Soc. Sec. Ruling 96-8, 61 Fed. Reg. 34464, 34476
(1996).  Looking at all the relevant evidence, the ALJ must
consider a claimant's ability to meet the physical, mental,

12

sensory and other demands of any job.  20 C.F.R. § 404.1545(a),
416.945(a).  "In determining the claimant's residual functional
capacity, the ALJ has a duty to establish, by competent medical
evidence, the physical and mental activity that the claimant can
perform in a work setting, after giving appropriate
consideration to all of her impairments." Ostronski v. Chater,
94 F.3d 413, 418 (8th Cir. 1996).

        In Mascio, the Fourth Circuit observed that SSR 96-8p
"explains how adjudicators should assess residual functional
capacity.  The Ruling instructs that the residual functional
capacity assessment must first identify the individual's
functional limitations or restrictions and assess his or her
work-related abilities on a function-by-function basis,
including the functions' listed in the regulations."  It is only
after the function-by-function analysis has been completed that
RFC may "be expressed in terms of the exertional levels of
work." Id.  Declining to adopt an unwieldy per se rule,
however, the Fourth Circuit instead adopted the Second Circuit's
approach, in which "remand may be appropriate . . . where an ALJ
fails to assess a claimant's capacity to perform relevant
functions, despite contradictory evidence in the record, or
where other inadequacies in the ALJ's analysis frustrate

meaningful review."  Id. (citing Cichoki v. Astrue, 729 F.3d
172, 177 (2d Cir. 2013)).

        The ALJ in Mascio found that the claimant had moderate
limitations in concentration, persistence, or pace.  See 780
F.3d at 637-38.  However, the ALJ utterly failed to articulate
why those limitations did not result in a limitation in the
claimant's RFC, and instead literally trailed off mid-sentence.
Id.  Because the court could discern no such reason in the ALJ's
incomplete decision, his analysis was found wanting, and remand
was ordered.  Id.; see also Winschel v. Comm'r of Soc. Sec., 631
F.3d 1176, 1180 (11th Cir. 2011) (cited by Mascio, 780 F.3d at
638) ("[W]hen medical evidence demonstrates that a claimant can
engage in simple, routine tasks or unskilled work despite
limitations in concentration, persistence, and pace, courts have
concluded that limiting the hypothetical to include only
unskilled work sufficiently accounts for such limitations.").

        Thus, under Mascio, an ALJ's RFC ruling must include a
narrative as to how the evidence supports each conclusion,
citing specific evidence in the record.  780 F.3d at 736.  Where
the medical evidence shows that a claimant can carry out simple
tasks, an ALJ's hypothetical to the vocational expert to that
effect will "sufficiently account[] for [a claimant's] moderate

14

limitation in maintaining concentration, persistence, and pace." Hurst v. Comm'r of Soc. Sec., 522 F. App'x 522, 525 (11th Cir. 2013) (internal quotations omitted).

Here, the ALJ found that plaintiff was able to perform simple, routine tasks. Tr. at 18-19, 28-29. At plaintiff's hearing, the ALJ presented the vocational expert with a hypothetical describing "work involving simple, routine tasks[.]" Tr. at 96. The ALJ also asked the vocational expert a hypothetical involving an individual "unable to sustain sufficient concentration, pace, or persistence[.]" Tr. at 101. It is the case that no mention was made, during examination of the vocational expert by the ALJ, of "moderate" limitations in concentration, pace, or persistence. Tr. at 93-108, although in her decision the ALJ found such limitations. Tr. at 19.

Dr. Cloonan's opinion, as well as Dr. Bernardo's notes made prior to her August 2012 mental health assessment, support the ALJ's finding that plaintiff was able to perform simple, routine tasks. In other words, the ALJ explained why plaintiff's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in plaintiff's residual functional capacity, beyond restricting plaintiff to unskilled work. Therefore, the ALJ's exclusion of

15

moderate limitations in concentration, persistence or pace from her hypothetical questions to the vocational expert does not require remand.

IV.

For the reasons stated, and having reviewed the record de novo, the court ORDERS as follows:

1. That the PF&R be, and it hereby is, adopted and incorporated herein;

2. That plaintiff's motion for judgment on the pleadings be, and it hereby is, denied;

3. That the Commissioner's motion for judgment on the pleadings be, and it hereby is, granted;

4. That the Commissioner's final decision be, and it hereby is, affirmed;

5. That judgment be, and it hereby is, granted in favor of the Commissioner; and

6. That this civil action be, and it hereby is, dismissed and stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and the United States Magistrate Judge.

DATED: March 30, 2016

John T. Copenhaver, Jr.
United States District Court

17